UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CAROL ANN WOOD,

                Plaintiff,

v.                                      1:18-CV-0553 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | ANTHONY ROONEY, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | HEETANO SHAMSOONDAR, ESQ.<br>LAURA BOLTZ, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 15.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.    RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1981. (T. 99.) She completed high school. (T. 180.) Generally, Plaintiff's alleged disability consists of herniated disc, left shoulder impairment, sesamoiditis in her right foot, and plantar fasciitis. (T. 179.) Her alleged disability onset date is April 8, 2015. (T. 99.) Her date last insured is December 31, 2020. (T. 13.) Plaintiff's past relevant work consists of letter carrier, laborer, and driver. (T. 180.)

### B. Procedural History

On April 16, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 99.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 1, 2017, Plaintiff appeared before the ALJ, Maria Herrero-Jaarsma. (T. 36-86.) On November 8, 2017, ALJ Herrero-Jaarsma issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-31.) On March 19, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-26.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2020 and Plaintiff had not engaged in substantial gainful activity since April 8, 2015. (T. 13.) Second, the ALJ found Plaintiff had the severe impairments of: lumbar degenerative disc disease; cervical degenerative disc

disease; left shoulder impairment; sesamoiditis of the right foot; asthma; obesity; major depressive disorder, recurrent, mild; and generalized anxiety disorder. (T. 14.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id*.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in [20 C.F.R. § 404.1567(a)] except [Plaintiff] must be able to change positions from sitting to standing during the eight-hour workday while remaining on task. [Plaintiff] can sit for one hour before having to shift positions and can stand for one hour before she needs to sit, all while remaining on task. [Plaintiff] can occasionally push, pull, climb ramps and stairs, balance on level surfaces, and stoop. [Plaintiff] cannot kneel, crouch, or crawl. [Plaintiff] can frequently, but not constantly, engage in rotation, flexion, and extension of her neck movement, meaning she can look down, turn her head right or left, look up, and hold head in a static position from one- to two-thirds of the day. [Plaintiff] can frequently, but not constantly, reach in front and/or laterally with the left upper extremity. [Plaintiff] can occasionally reach overhead with the left upper extremity. [Plaintiff] has no other manipulative, visual, or communicative limitations. [Plaintiff] can never tolerate exposure to unprotected heights, moving machinery, or moving mechanical parts. [Plaintiff] should avoid exposure to extreme cold, extreme heat, wetness, humidity, odors, fumes, dusts, gasses, and poor ventilation. [Plaintiff] is able to understand, carry out, remember, and apply simple directions and instructions. [Plaintiff] must work in a low stress environment (meaning one with no supervisory responsibilities and no independent decision-making required except with respect to simple, routine decisions, and with few, if any, work place changes in work routines, processes or settings). [Plaintiff] is limited to work that involves occasional contact and interaction with supervisors, co-workers and the public. [Plaintiff] can be around coworkers throughout the day, but cannot perform tandem job tasks requiring cooperation with coworkers.

(T. 16-17.)[1] Fifth, the ALJ determined Plaintiff could not perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24-25.)

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

3

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in affording treating source, Maria Cartagena, M.D.'s opinion less than controlling weight. (Dkt No. 11 at 13-17.) Second, and lastly, Plaintiff argues the ALJ erred in affording treating chiropractor, Thomas Denecke, D.C.'s opinion little weight. (*Id*. at 17-20.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 14.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ properly evaluated the opinion evidence from Drs. Cartagena and Denecke. (Dkt. No. 13 at 12-18.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

---

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.  Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Dr. Cartagena

Dr. Cartagena provided Plaintiff mental health medication management. (T. 513-542.) On August 21, 2017, Dr. Cartagena completed a "Mental Residual Functional Capacity Questionnaire." (T. 601-605.) Dr. Cartagena opined Plaintiff was "seriously limited" in every area of mental abilities and aptitudes needed to do unskilled work. (T. 603-604.)[2] The ALJ afforded the doctor's opinion "reduced weight" because the "severity of the limitations expressed by Dr. Cartagena are inconsistent with the relatively normal mental status examinations found in her treatment notes." (T. 24.) The ALJ also afforded the opinion reduced weight because portions of the form were left blank. (*Id.*)

---

[2] "Seriously limited means ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting." (T. 603.)

6

Plaintiff argues the ALJ committed legal error because she failed to recontact Dr. Cartagena to seek clarification before rejecting her opinion. (Dkt. No. 11 at 15.) Defendant asserts the ALJ was not required to recontact Dr. Cartagena because the record was sufficient for the ALJ to make a disability determination. (Dkt. No. 13 at 15-16.) For the reasons outlined below, the ALJ did not commit legal error in failing to recontact Dr. Cartagena.

In support of her argument Plaintiff relies on the holdings in *Urena-Perez v. Astrue*, No. 06-CV-2589, 2009 WL 1726217, at *29 (S.D.N.Y. Jan. 6, 2009), *report and recommendation adopted as modified,* No. 06-CV-2589, 2009 WL 1726212 (S.D.N.Y. June 18, 2009) and *Hidalgo v. Colvin*, No. 12-CV-9009, 2014 WL 2884018, at *19 (S.D.N.Y. June 25, 2014). (Dkt. No. 11 at 15.) In *Urena-Perez*, the court held the ALJ had a duty to "seek additional evidence or clarification from [the] medical source when a report from [that] medical source contains conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information." *Urena-Perez*, 2009 WL 1726217, at *33 (citing 20 C.F.R. § 404.1512(e)(1)). In *Hidalgo*, the court held the ALJ had an affirmative duty to seek clarification from a treating source when he perceived an inconsistency between the treating source's opinion and the treating source's notations. *Hidalgo*, 2014 WL 2884018, at *19. However, in both cases the courts relied on a former version of 20 C.F.R. § 404.1512(e) that has since been amended[3].

---

[3]  *Hidalgo v. Colvin*, 2014 WL 2884018, at *19 relied on the holding in *Morillo v. Apfel*, 150 F. Supp. 2d 540, 546 (S.D.N.Y. 2001) which in turn relied on the holdings in *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998) and *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996) which relied on the language in 20 C.F.R. § 404.1512(e). "The regulations also state that, '[w]hen the evidence we receive from your treating physician ... or other medical source is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... or other medical source to determine whether the additional information we need is readily available.' " *Perez,* 77 F.3d at 47 (citing 20 C.F.R. § 404.1512(e)). The court in *Hildalgo* also relied on the holding in *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) which in turn relied on 20 C.F.R. § 404.1512(e).

7

Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512(e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to recontact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). Both Plaintiff's 2015 application and the ALJ's 2017 decision were after the removal of paragraph (e), thus the new section applies.

Failure to recontact a treating source is not legal error because such recontact is not mandatory. *Preston v. Berryhill*, 254 F. Supp. 3d 379, 384 (N.D.N.Y. 2017). In addition, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record." *Morris v. Berryhill*, 721 F. App'x. 25 (2d Cir. 2018); *see Rusin v. Berryhill*, 726 F. App'x 837, 839-840 (2d Cir. 2018) (the ALJ was under no obligation to recontact treating source to resolve inconsistencies between doctor's opinion and treatment notations where there were no obvious gaps in the administrative record and the ALJ possessed plaintiff's complete medical history); *see Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (citing

---

In addition, effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

*Rosa*, 168 F.3d at 79 n.5)); *see Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012) (ALJ only obligated to recontact treating source where the records received are inadequate to determine disability); *see also Rebull v. Massanari*, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002). Therefore, contrary to Plaintiff's assertion, the ALJ did not commit *per se* legal error in failing to recontact Dr. Cartagena before affording her opinion reduced weight based on inconsistencies between the doctor's opinion and the doctor's treatment notations.

Plaintiff next argues her part-time work did not preclude a finding of disability and Dr. Cartagena's opinion should be read to have taken Plaintiff's part-time work into account. (Dkt. No. 11 at 16.) At the time of her hearing Plaintiff was working part-time, approximately ten to twenty hours a week, in a retail position. (T. 46-47.) The ALJ did not find Plaintiff not disabled because she was able to work part-time. Nor did the ALJ discredit Dr. Cartagena's opinion based on Plaintiff's ability to work part-time.

In evaluating Dr. Cartagena's opinion, the ALJ noted that the sections of the form requesting an opinion as to how many hours Plaintiff could work and the section asking the doctor to reconcile Plaintiff's "very mild GAF scores" with her opined limitations, were left blank. (T. 24.) As stated by the ALJ, Dr. Cartagena did not complete the section of the medical source statement form which asked if Plaintiff was limited in the number of hours she could work and if so how many hours. (T. 605.) Contrary to Plaintiff's assertion, the ALJ here did not find Plaintiff's activities inconsistent with the doctor's opinion, the ALJ afforded the doctor's opinion less than controlling weight because part of the form was blank. An ALJ may properly afford a treating source opinion less than controlling weight where, as here, the opinion conflicted with treatment

9

notations, other medical opinion evidence in the record, and the doctor declined to complete a portion of the check box form. *Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016).

Further, insofar as the ALJ did find Plaintiff's activities, including part time work, inconsistent with Dr. Cartagena's opinion, such finding was proper and supported by substantial evidence. *Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) **(**ALJ had properly afforded opinion of treating source less than controlling weight because the restrictive assessment was inconsistent with the source's own treatment notes, the conclusion of other medical sources, and plaintiff's testimony regarding her daily functioning). Therefore, the ALJ did not commit legal error in assessing Dr. Cartagena's opinion.

### B. Dr. Denecke

Plaintiff received chiropractic care from Dr. Denecke after a motor vehicle accident in April of 2015. (T. 481.) On May 31, 2015, Dr. Denecke completed a form for the New York State Office of Temporary and Disability. (T. 365-372.) Dr. Denecke opined Plaintiff was able to lift and carry up 20 pounds occasionally and could carry a maximum of 25 pounds. (T. 367.) He opined she could stand and/or walk up to two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, and was limited to pushing and pulling 50 pounds. (*Id.*)

The ALJ afforded Dr. Denecke's opinion "little weight." (T. 23.) The ALJ reasoned Dr. Denecke was not an acceptable medical source and the opinion was rendered more than two years prior to Plaintiff's hearing. (*Id.*) The ALJ further noted he

considered the doctor's "brief treatment notes . . . for clinical and diagnostic findings as well as functional limitations." (*Id*.)

Plaintiff asserts the ALJ erred in evaluating Dr. Denecke's opinion based on his status as a non-acceptable medical source. (Dkt. No. 11 at 17-20.) Second, Plaintiff argues the ALJ erred in rejecting Dr. Denecke's opinion based the opinion's timing. (*Id*.)

Chiropractors, such as Dr. Denecke are not acceptable medical sources under the regulations. 20 C.F.R. § 404.1502(a). Because a chiropractor is not an acceptable medical source, an ALJ is not required to give a chiropractor's opinion controlling weight under the Commissioner's regulations for treating sources. *Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) (citing *Diaz v. Shalala*, 59 F.3d 307, 313-314 (2d Cir. 1995) (chiropractor does not qualify as an acceptable medical source and therefore under no circumstances can the regulations be read to require an ALJ to give controlling weight to a chiropractor's opinion); *see LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (argument that an opinion from a non-acceptable treating medical source should be afforded the same deference as an opinion from an acceptable treating source within the meaning of the Social Security Administrations regulations is incorrect); *see Bushey v. Colvin*, 552 F. App'x 97 (2d Cir. 2014) (ALJ properly refused to afford controlling weight to opinion of a non-acceptable medical source); *see Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (an ALJ is "free to consider" statements of other sources in making her overall assessment; however, "those opinions do not demand the same deference as those of a treating physician"); *see Shamburger v. Colvin,* 2017 WL 4003032, at *3 (W.D.N.Y. Sept. 12, 2017) (chiropractor is not considered an acceptable medical source such as a treating source who can provide

medical opinions); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) ("other sources," like a chiropractor, "cannot establish the existence of a medically determinable impairment ... [but] may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). Therefore, the ALJ was not required to examine Dr. Denecke's statement with the same deference afforded to an acceptable treating source. Here, the ALJ did not reject the chiropractor's statement solely because he was not an acceptable medical source. The ALJ properly considered the fact that Dr. Denecke was not an acceptable medical source in assessing his opinion.

Plaintiff's assertion, that the ALJ erred in affording Dr. Denecke's opinion less weight based on the opinion being provided more than two years prior to the decision, also fails. (Dkt. No. 11 at 19.) In her decision, the ALJ noted Plaintiff received chiropractic care from Dr. Denecke in 2015; however ceased treatment in late 2015. (T. 20-21.) Dr. Denecke indicated he treated Plaintiff on July 9 and August 15, 2015; however, she had difficulty scheduling appointments due to work and child care. (T. 481.) Dr. Denecke did not treat Plaintiff after July 2015. (T. 482.) The ALJ aptly noted Dr. Denecke treated Plaintiff on two occasions and provided an opinion shortly after Plaintiff's motor vehicle accident approximately two years prior to the ALJ's decision. (T. 23.) Therefore, the ALJ properly considered the timing of Dr. Denecke's statement, and the length and nature of treatment, in her overall assessment of the chiropractor's opinion.

Overall, the ALJ did not commit legal error in her assessment of the opinion evidence provided by Drs. Cartagena and Denecke. Plaintiff does not assert the ALJ

erred in her assessment of the other medical opinion evidence in the record.  A review of the record and the ALJ's decision indicates that the ALJ properly assessed the other medical opinions in the record and her RFC determination was supported by substantial evidence in the record.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 26, 2019

_____
William B. Mitchell Carter
U.S. Magistrate Judge